# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**UNITED STATES OF AMERICA**,

*Plaintiff*,

v.

**THEODORE M. DIBIASE, JR.**,

*Defendant*.

CAUSE NO. 3:23-CR-35-CWR-LGI

## ORDER

In October 2024, the government moved for an inquiry into potential conflicts of interest involving the defendant's law firm. Docket No. 33. The motion and ensuing briefing were docketed with "restricted" status, which means they were available only to counsel of record, and not the general public. One hearing was held in October via zoom without public access; another hearing was held in open court in November. A member of the media sat in the courtroom gallery that day. The motion was adjudicated in December in a restricted Order. Docket No. 40.

In April 2025, the Court asked the parties to express their positions, if any, on whether Fifth Circuit precedent permits the relevant documents, *i.e.*, Docket Nos. 33, 37, 39, and 40, and their attachments, to remain unavailable to the public.

A third party mentioned in some of the disqualification arguments responded with a motion to maintain the documents' confidentiality.[1] The crux of the movant's argument is reproduced here:

> [Movant] does not suggest that it was the government's intent to imply criminality, but the government's filings and arguments easily could be interpreted as such. Given the media attention and heightened emotions surrounding the "welfare scandal," it would be dangerous to allow a government motion concerning an attorney's alleged conflict of interest to imply wrongdoing by [movant] without due process protections or a forum in which to respond. . . .
>
> [Movant] respectfully requests that documents 33, 37, 39, and 40 remain under seal. Alternatively, [movant] respectfully requests that all allegations or suggestions of criminality be redacted prior to these documents being unsealed.

*See* Motion at 4-6.

The movant invokes *United States v. Briggs*, a case in which the Fifth Circuit expressed its disgust at a grand jury indictment that named specific persons as co-conspirators yet declined to charge them with crimes. 514 F.2d 794, 797-98 (5th Cir. 1975). *Briggs* said judges should nevertheless give more deference to statements of prosecutors, like those contained in a bill of particulars or made at trial, because they do "not carry the imprimatur of credibility that official grand jury action does." *Id.* at 805. A few years later, though, the Fifth Circuit formally extended *Briggs* to prosecutors' statements. "We can think of no reason to distinguish between an official defamation originating from a federal grand jury or an Assistant United States Attorney," it held. *In re Smith*, 656 F.2d 1101, 1106 (5th Cir. 1981).

---

[1] The only other party to timely respond to the Court's inquiry was the government. After a clarification, it ultimately said it had no independent reason to object to public access, but also did not oppose the motion to maintain confidentiality.

2

Later cases have further refined the law. It is understandable, we now know, that the government will sometimes make "an untested allegation . . . in anticipation of a possible evidentiary dispute that never [comes] to pass." *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 693 (5th Cir. 2010). Striking the name of a non-party negatively referenced in that allegation may not be necessary if the court considers, among other things, whether "[t]he allegation was offered in furtherance of a legitimate purpose," "the source and the method of the accusation," and "the degree to which the inclusion of the name is merely repetition of allegations raised by the Government and subjected to judicial scrutiny in other proceedings." *Id.* at 691 & 693.

At the same time, these legitimate interests of a non-party must be weighed against the public's own legitimate interests in knowing what's happening in the third branch of government. Those principles are also well-established.

"Once a matter is brought before a court for resolution, it is no longer solely the parties' case, but also the public's case." *Brown v. Advantage Eng'g, Inc.*, 960 F.2d 1013, 1016 (11th Cir. 1992). "Judicial records are public records. And public records, by definition, presume public access." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021).

"The public has a common law right to inspect and copy judicial records." *Bradley on behalf of AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020) (quotation marks and citation omitted). "This right promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness, and serves as a check on the integrity of the system." *Id.* (cleaned up).

The public's right of access "is not absolute." *Id.* "In exercising its discretion to seal judicial records, the court must balance the public's common law right of access against the

3

interests favoring nondisclosure." *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (collecting cases). "[T]he relevant facts and circumstances of the particular case" must be considered. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978) (citation omitted).

Ultimately, "the district court's discretion to seal the record of judicial proceedings is to be exercised charily." *Van Waeyenberghe*, 990 F.2d at 848 (quotation marks and citation omitted). "[C]ourts should be ungenerous with their discretion to seal judicial records." *Binh Hoa Le*, 990 F.3d at 418 (citations omitted).

Here, the Court concludes that a middle path is warranted. The movant has sound privacy interests in not being accused of a crime by the federal government. These interests must be balanced against the public's right to know what its government is up to. The Court also recognizes that the media attended the second hearing and has demonstrated an interest in the subject matter of these proceedings, including going so far as to intervene in a related case referenced in the prior Order. *See, e.g.*, Docket No. 64 in *United States v. The Real Property Known as 115 Rosedowne Bend Madison, MS 39110*, No. 3:20-CV-415-DPJ-LGI (S.D. Miss. Sept. 23, 2022) (granting media organization's motion to intervene and unseal case).

Given the particulars, the Court finds that the least restrictive way to both secure the movant's privacy and provide an appropriate measure of public access is to redact all mentions of the movant from the Court's ruling on disqualification. Striking that balance may help all involved avoid additional time-consuming satellite litigation as we approach trial.

**IT IS THEREFORE ORDERED THAT:**

The Clerk shall maintain the "restricted" status of Docket Nos. 33, 37, 39, and 40, including their attachments.

4

The Clerk shall file under seal this Order, the movant's brief, and a redacted version of the December 2024 Order declining to disqualify the defendant's law firm.

To the extent they disagree with this ruling or remedy, the parties and the movant may exercise any rights they have to seek or take an immediate interlocutory appeal. If no such appeal is sought by May 28, 2025, then shortly thereafter the Court will publicly docket today's Order and the redacted version of the December 2024 Order.

**SO ORDERED**, this the 28th day of April, 2025.

                                          s/ Carlton W. Reeves
                                          UNITED STATES DISTRICT JUDGE